# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2017AP1595-CQ |
| COMPLETE TITLE: | Winebow, Inc.,<br>        Plaintiff-Appellee,<br>   v.<br>Capitol-Husting Co., Inc. and L'Eft Bank Wine<br>Co. Limited,<br>        Defendants-Appellants. |

ON CERTIFIED QUESTION FROM THE UNITED STATES
COURT OF APPEALS FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| OPINION FILED: | June 5, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 19, 2018 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | BRADLEY, R. G., J. joined by ABRAHAMSON, J. and KELLY, J. dissent (Opinion filed). |
|   NOT PARTICIPATING: | |

ATTORNEYS:

For the defendants-appellants, there were briefs filed by *Thomas L. Shriner, Jr.*, *Gregory N. Heinen*, and *Foley & Lardner LLP*, Milwaukee. There was an oral argument by *Thomas L. Shriner, Jr.*

For the plaintiff-appellee, there was a brief filed by *E. King Poor* (*pro hac vice*) and *Quarles & Brady LLP*, Chicago, Illinois, with whom on the brief were *Daniel M. Janssen*, and *Quarles & Brady LLP*, Milwaukee.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2017AP1595-CQ

STATE OF WISCONSIN                 :        IN SUPREME COURT

**Winebow, Inc.,**

           **Plaintiff-Appellee,**

      **v.**

**Capitol-Husting Co., Inc. and L'Eft Bank Wine Co. Limited,**

           **Defendants-Appellants.**

**FILED**

**JUN 5, 2018**

Sheila T. Reiff
Clerk of Supreme Court

CERTIFICATION of question of law from the United States Court of Appeals for the Seventh Circuit. *Certified question answered in the negative and cause remanded.*

¶1    ANN WALSH BRADLEY, J.    This case is before the court on a certified question from the United States Court of Appeals for the Seventh Circuit.  Winebow, Inc. v. Capitol-Husting Co., Inc., 867 F.3d 862 (7th Cir. 2017); see Wis. Stat. § 821.01 (2015-16).[1]  It certified the following question:  "Does the definition of a dealership contained in Wis. Stat.

_____

[1] All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

§ 135.02(3)(b) include wine grantor-dealer relationships?" Winebow, 867 F.3d at 871.

¶2 Our answer to this certified question will aid the Seventh Circuit in determining whether Winebow, Inc.'s (Winebow) attempt to end its business relationship with two wine distributors is governed by the unilateral termination limitations of the Wisconsin Fair Dealership Law (WFDL). See Wis. Stat. § 135.03.

¶3 Winebow unilaterally terminated its relationship with Capitol-Husting Co., Inc. and L'Eft Bank Wine Co. Limited (the Distributors) after becoming dissatisfied. It argues that the action was permissible because the parties' business relationship is not an "intoxicating liquor" dealership entitled to the protections of the WFDL. See §§ 135.02(3)(b), 135.066. On the other hand, the Distributors contend that a wine grantor-dealer relationship is a "dealership" entitled to such protections and thus Winebow cannot unilaterally terminate its relationship with the Distributors absent a showing of good cause.

¶4 We conclude that a wine grantor-dealer relationship is not included within the definition of a dealership in Wis. Stat. § 135.02(3)(b). Section 135.066(2) provides the operative definition of "intoxicating liquor" for purposes of ch. 135, and such definition explicitly excludes wine.

¶5 Accordingly, we answer the certified question in the negative.

2

I

¶6 Winebow is engaged in the business of importing and distributing wine to downstream wholesalers. Since 2004, Winebow has used Capitol-Husting as a distributor of its wines, and in 2009 it commenced a similar relationship with L'Eft Bank.

¶7 After becoming dissatisfied with the Distributors, Winebow abruptly terminated its relationship with them in February of 2015. The parties did not have any express written agreement that would prevent Winebow from unilaterally terminating their relationships.

¶8 The Distributors responded to Winebow's termination by letter, indicating their belief that they are entitled to the protections of the WFDL. Such protections would prevent Winebow from terminating their relationships absent "good cause." See Wis. Stat. § 135.03.

¶9 Winebow countered by filing a declaratory judgment action in the United States District Court for the Eastern District of Wisconsin. Winebow, Inc. v. Capitol-Husting Co., Inc., No. 15-CV-225, slip op. at *1 (E.D. Wis. June 18, 2015). It sought a declaration that it has no continuing obligations to the Distributors. Id.

¶10 The District Court ruled in Winebow's favor. It determined that "[w]ine is not intoxicating liquor in the context of the WFDL, and thus the [Distributors'] business relationship with Winebow is not subject to the unilateral termination limitations of Chapter 135." Id. at *4.

3

¶11 The Distributors appealed to the United States Court of Appeals for the Seventh Circuit, contending that wine dealerships are per se "intoxicating liquor" dealerships entitled to the protections of the WFDL. Winebow, 867 F.3d at 867. The Seventh Circuit certified to this court the question of whether the definition of "dealership" contained in Wis. Stat. § 135.02(3)(b) includes wine grantor-dealer relationships. Id. at 870-71.

II

¶12 Underlying this case are proposed statutory changes to the WFDL and the governor's partial veto of some of these changes. See 1999 Wis. Act 9, §§ 2166m, 2166s. We thus provide brief background on the WFDL, the proposed changes to it, and the partial veto.

¶13 The WFDL provides in part that a grantor of a dealership may not terminate a dealership agreement without good cause. Wis. Stat. § 135.03; see Ziegler Co., Inc. v. Rexnord, Inc., 139 Wis. 2d 593, 594, 407 N.W.2d 873 (1987). Its underlying purposes and policies include "[t]o promote the compelling interest of the public in fair business relations between dealers and grantors, and in the continuation of dealerships on a fair basis." § 135.025(2)(a). Additionally, it aims "[t]o protect dealers against unfair treatment by grantors, who inherently have superior economic power and superior bargaining power in the negotiation of dealerships[.]" § 135.025(2)(b).

4

¶14 A grantor who violates the WFDL may be subject to an action for "damages sustained by the dealer as a consequence of the grantor's violation, together with the actual costs of the action, including reasonable attorney fees." Wis. Stat. § 135.06. Further, a "dealer also may be granted injunctive relief against unlawful termination, cancellation, nonrenewal or substantial change of competitive circumstances." Id.

¶15 However, the WFDL does not apply to all business relationships, but only to those defined as "dealerships." In 1999, the legislature sought to broaden the WFDL's reach to ensure that "intoxicating liquor" dealers were protected. See 1999 Wis. Act 9, §§ 2166m, 2166s.

¶16 It did so by making two significant changes. First, it amended the definition of a "dealership" to include distributors of "intoxicating liquors." 1999 Wis. Act 9, § 2166m. The new definition, codified at Wis. Stat. § 135.02(3)(b), included within a "dealership":

> A contract or agreement, either expressed or implied, whether oral or written, between 2 or more persons by which a wholesaler, as defined in s. 125.02(21), is granted the right to sell or distribute intoxicating liquor or use a trade name, trademark, service mark, logotype, advertising or other commercial symbol related to intoxicating liquor. This paragraph does not apply to dealerships described in s. 135.066(5)(a) and (b).

1999 Wis. Act 9, § 2166m.

¶17 This revised "dealership" definition explicitly incorporated the definition of "intoxicating liquor" found in Wis. Stat. ch. 125, which regulates alcohol beverages. Pursuant

5

to Wis. Stat. § 125.02(8), "vinous liquors," or in other words "wine," is expressly included under the umbrella of "intoxicating liquor":

> "Intoxicating liquor" means all ardent, spirituous, distilled or vinous liquors, liquids or compounds, whether medicated, proprietary, patented or not, and by whatever name called, containing 0.5 percent or more of alcohol by volume, which are beverages, but does not include "fermented malt beverages."

§ 125.02(8).

¶18 Second, the legislature created Wis. Stat. § 135.066. 1999 Wis. Act 9, § 2166s. This new provision expressed the legislature's desire for a competitive and stable wholesale liquor market. See § 135.066(1). Like the legislature's revised definition of "dealership," the newly enacted § 135.066 imported the definition of "intoxicating liquor" from § 125.02(8). § 135.066(2).

¶19 Both of these changes were included in the 1999 budget bill. See 1999 Wis. Act 9. However, Governor Tommy Thompson used his partial veto power to alter the revisions passed by the legislature.[2]

---

[2] The governor's partial veto power arises from Article V, § 10 of the Wisconsin Constitution, which sets forth, "Appropriation bills may be approved in whole or in part by the governor, and the part approved shall become law." Wis. Const. art. V, § 10(1)(b). Pursuant to the partial veto power, the governor may strike out language in an appropriation measure, but may not add language. See State ex rel. Wisconsin Senate v. Thompson, 144 Wis. 2d 429, 437, 424 N.W.2d 385 (1988); State ex rel. Kleczka v. Conta, 82 Wis. 2d 679, 707-08, 264 N.W.2d 539 (1978).

(continued)

¶20 Specifically, the governor struck language proposed by the legislature from both Wis. Stat. §§ 135.02(3)(b) and 135.066. With respect to § 135.02(3)(b), he deleted the cross-reference to the existing definition of "intoxicating liquor" found in ch. 125.[3]

¶21 Edits to Wis. Stat. § 135.066 were much more extensive. The governor eliminated large portions of

---

The partial veto power was originally a very broad power, but has been subsequently limited. Originally, the governor could "veto individual words, letters and digits, and also may reduce appropriations by striking digits, as long as what remains after veto is a complete, entire, and workable law." Wisconsin Senate, 144 Wis. 2d at 437.

A 1990 amendment slightly limited the power, dictating that "the governor may not create a new word by rejecting individual letters in the words of the enrolled bill." Wis. Const. art. V, § 10(1)(c) (1990). This was the version in effect when Governor Thompson exercised the veto at issue in this case. A subsequent revision in 2008 brought Article V, § 10 to its present form, further limiting the partial veto power by stating that "the governor may not create a new word by rejecting individual letters in the words of the enrolled bill, and may not create a new sentence by combining parts of 2 or more sentences of the enrolled bill." Wis. Const. art. V, § 10(1)(c).

[3] The governor's veto with respect to Wis. Stat. § 135.02(3)(b) was as follows:

A contract or agreement, either expressed or implied, whether oral or written, between 2 or more persons by which a wholesaler, as defined in s. 125.02(21), is granted the right to sell or distribute intoxicating liquor, as defined in s. 125.02(8), or use a trade name, trademark, service mark, logotype, advertising or other commercial symbol related to intoxicating liquor. This paragraph does not apply to dealerships described in s. 135.066(5)(a) and (b).

§ 135.066(2)-(4). What remained was the sole sentence, "'Intoxicating liquor' has the same meaning given in s. 125.02(8) minus wine."[4]

---

[4] Observe that the words "minus" in Wis. Stat. § 135.066(2)(a), formerly subsection (2)(b) in draft legislation, and "wine" in former subsection (2)(d) are left unscathed:

(2) DEFINITIONS. ~~In this section~~:

(a) "Intoxicating liquor" has the same meaning given in s. 125.02(8)~~.~~

~~(b) "Net revenues" means the gross dollar amount received from the sale of intoxicating liquor~~ minus ~~adjustments for returns, discounts and allowances.~~

~~(c) "Wholesaler" has the meaning given in s. 125.02(21).~~

~~(d) "Wine" has the meaning given in 125.02(22).~~

~~(3) LIABILITY OF TRANSFEREE OF INTOXICATING LIQUOR GRANTOR.~~

~~(a) In this subsection:~~

~~1. "Goodwill" includes the use of a trademark, trade name, logotype or other commercial symbol, and the use of a variation of a trademark, trade name, logotype, advertisement or other commercial symbol.~~

~~2. "Transferee" means a person who acquires any asset or activity of a grantor's intoxicating liquor business and who uses the goodwill associated with the intoxicating liquor of the grantor.~~

~~(b) A transferee shall be bound by each of the grantor's dealerships with the grantor's wholesalers and consequently shall be considered~~

(continued)

8

¶22 Legislative findings enumerated in Wis. Stat. § 135.066(1) and a severability provision in sub. (6) escaped the veto pen, but the governor struck several references to wine in sub. (5), a nonapplicability provision.[5] The legislature did not override the governor's veto.

---

> ~~a grantor for the purposes of, and shall comply with, the requirements of this chapter.~~
>
> ~~(4) CHANGE IN OWNERSHIP.~~
>
> > ~~(a) In this subsection, "successor wholesaler" means a wholesaler who succeeds to the management, ownership or control of a wholesaler or wholesaler's business or any part of a wholesaler's business by any means including by stock purchase, sale of assets or transfer or assignment of a brand of intoxicating liquor that is the subject of a dealership agreement.~~
>
> > ~~(b) A change in the management, ownership or control of a wholesaler, a wholesaler's business or any part of a wholesaler's business is not good cause for a grantor to terminate, cancel, fail to renew or substantially change the competitive circumstances of its dealership with a successor wholesaler if the successor wholesaler meets the grantor's reasonable and material qualifications for wholesaler applicants in effect at the time of the change. If the successor wholesaler meets the grantor's reasonable and material qualifications for wholesaler applicants in effect at the time of the change, the successor wholesaler shall succeed to the dealership rights of the predecessor wholesaler and the grantor shall continue to be bound by the dealership.~~

[5] In this section, the partial veto was as follows:

(5) NONAPPLICABILITY. This section does not apply to any of the following dealerships:

(continued)

III

¶23 This case requires us to interpret Wis. Stat. §§ 135.02 and 135.066. Statutory interpretation presents a question of law we review independently. Roberts v. T.H.E. Ins. Co., 2016 WI 20, ¶19, 367 Wis. 2d 386, 879 N.W.2d 492. We are not bound by the federal district court's interpretation, but it may aid in our analysis. Baldewein Co. v. Tri-Clover, Inc., 2000 WI 20, ¶10, 233 Wis. 2d 57, 606 N.W.2d 145 (citing Daanen & Janssen, Inc. v. Cedarapids, Inc., 216 Wis. 2d 395, 400, 573 N.W.2d 842 (1998)).

IV

¶24 With the preceding context and standard of review in hand, we examine next the specific question certified by the Seventh Circuit: whether the definition of a dealership

---

(a) Dealerships in which a grantor, including any affiliate, division or subsidiary of the grantor, has never produced more than 200,000 gallons of intoxicating liquor in any year.

(b) Dealerships in which the dealer's net revenues from the sale of all of the grantor's brands of intoxicating liquor, except wine, constitute less than 5% of the dealer's total net revenues from the sale of intoxicating liquor, except wine, during the dealer's most recent fiscal year preceding a grantor's cancellation or alteration of a dealership and the dealer's net revenues from the sale of all of the grantor's brands of wine constitute less than 5% of the dealer's total net revenues from the sale of wine during the dealer's most recent fiscal year preceding a grantor's cancellation or alteration of a dealership.

10

contained in Wis. Stat. § 135.02(3)(b) includes wine grantor-dealer relationships.

¶25 Winebow asserts that the "minus wine" definition of "intoxicating liquor" in Wis. Stat. § 135.066 applies to the entirety of ch. 135, and that consequently we should answer the certified question in the negative. Conversely, the Distributors contend that the definition of "dealership" in § 135.02(3)(b) incorporates the definition of "intoxicating liquor" from ch. 125, a definition that expressly includes wine.

¶26 Statutory interpretation begins with the language of the statute. State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. If the meaning of the statute is plain, we need not further the inquiry. Id.

¶27 Wisconsin Stat. § 135.066(2) defines "intoxicating liquor" as having "the meaning given in s. 125.02(8) minus wine." Winebow suggests that the language of the statute plainly and unambiguously excludes wine from the definition of "intoxicating liquor" for chapter 135.

¶28 We agree with Winebow. Its interpretation of Wis. Stat. § 135.066(2) is supported by several considerations. First, contrary to the Distributors' argument, the fact that the definition is not located in the "definitions" section of the statute is not dispositive. Neither the Distributors nor the dissent cite any case law that exclusively tethers definitions to a correspondingly labeled section of the statutes.

11

¶29 Wisconsin Stat. § 135.066(2) provides the sole definition of "intoxicating liquor" in ch. 135, and it excludes wine. The term "intoxicating liquor" is used eleven times in chapter 135, but defined only once. We aim for uniformity of definitions within a statutory chapter, not diversity of definitions. See Bank Mut. v. S.J. Boyer Const., Inc., 2010 WI 74, ¶31, 326 Wis. 2d 521, 785 N.W.2d 462. "When the same term is used throughout a chapter of the statutes, it is a reasonable deduction that the legislature intended that the term possess an identical meaning each time it appears." Id. For one definition of "intoxicating liquor" to control § 135.066 and another to control the rest of the chapter would run afoul of this maxim.

¶30 Rather, "[s]ections of statutes relating to the same subject matter must be construed in pari materia."[6] State v. Clausen, 105 Wis. 2d 231, 244, 313 N.W.2d 819 (1982). Applying this canon on interpretation here, we arrive at the conclusion that the single "intoxicating liquor" definition supplied in ch. 135 should apply to the entirety of the chapter.

¶31 Further, the Wis. Stat. § 135.066(2) "minus wine" definition would serve no purpose if limited in its application

---

[6] "In pari materia" refers to statutes and regulations relating to the same subject matter or having a common purpose. In re Jeremiah C., 2003 WI App 40, ¶17, 260 Wis. 2d 359, 659 N.W.2d 193. The statutory construction doctrine of in pari materia requires a court to read, apply, and construe statutes relating to the same subject matter together. Id.

to § 135.066 but not the remainder of ch. 135. Outside of the "minus wine" definition, § 135.066 contains legislative findings, a nonapplicability provision, and a severability provision. The "minus wine" language does not affect any of these remaining provisions.[7] Limiting the application of the "minus wine" definition to § 135.066 would render the language a nullity.[8]

¶32 Additionally, treatises on both the WFDL and alcohol regulation uniformly support our application of the "minus wine" definition provided by Wis. Stat. § 135.066(2). As one treatise on the WFDL advises, "intoxicating liquor refers to spirits, not wine or beer." Michael A. Bowen et al., The Wisconsin Fair

---

[7] The dissent asserts that "[t]he definition of intoxicating liquor in § 135.066 retains a function even if limited to its specific section of ch. 135." Dissent, ¶50. According to the dissent, "[i]t applies to the legislative findings of sub. (1), the non-applicability provisions of sub. (5), and the severability part of sub. (6). Id. But if the "minus wine" definition applies within § 135.066 only, what is its actual effect? The legislative findings are mere background and define no substantive rights. Further, as the Seventh Circuit correctly recognized in its certification, none of the other provisions of § 135.066 is affected by the "minus wine" language of sub. (2). See Winebow, Inc. v. Capitol-Husting Co., Inc., 867 F.3d 862, 868 (7th Cir. 2017). The dissent's interpretation thus renders the "minus wine" language superfluous.

[8] Stated differently, to read the statute to include wine would render "minus wine" mere surplusage, a result that must be avoided. See Milwaukee Cty. v. Dep't of Indus., Labor and Human Relations Comm'n, 80 Wis. 2d 445, 452-53, 259 N.W.2d 118 (1977) (quoting Cook v. Indus. Comm'n, 31 Wis. 2d 232, 239-40, 142 N.W.2d 827 (1966) ("[S]tatutes should be so construed that no word or clause shall be rendered surplusage.")).

13

Dealership Law § 4.34A at 61 (4th ed. 2012); see also id. (explaining that "the governor's partial vetoes of the 1999 amendment make it clear that he intended (3)(b) to be inapplicable to wine wholesalers.").[9]

¶33 Similarly, a treatise on Wisconsin alcohol beverages regulation opines that "the applicable definition of intoxicating liquor in Wis. Stat. ch. 135 excludes wine, such that [ch. 135's] special WFDL provisions apply only to distilled-spirits distribution agreements." Aaron R. Gary, Alcohol Beverages Regulation in Wisconsin § 4.66 (2nd ed. 2016).

¶34 In the over eighteen years since the enactment of the "minus wine" provision, the legislature certainly could have acted to amend the law if it thought the commentators' understanding was incorrect. However, it did not override the governor's veto in 1999, and it has remained silent in the intervening years.

¶35 As the Seventh Circuit aptly observed in its certification, there is "no express statutory language" supporting the Distributors' position. See Winebow, 867 F.3d at

---

[9] In his veto message, Governor Thompson was explicit regarding the reasons for his partial veto: "I am partially vetoing these provisions so that wine will be excluded from treatment under these changes to the Wisconsin Fair Dealership Law because I object to wine being treated the same as intoxicating liquor." Governor's Veto Message, Act 9, at § F.4 (Oct. 27, 1999); see State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶51, 271 Wis. 2d 633, 681 N.W.2d 110 ("legislative history is sometimes consulted to confirm or verify a plain-meaning interpretation").

14

869. Cross references to their preferred definition were removed from Wis. Stat. § 135.066 by Governor Thompson's partial veto. Following that veto, what remains is unambiguous in its effect to exclude wine from the definition of "intoxicating liquor."

¶36 Instead of giving effect to ch. 135's single definition of "intoxicating liquor," the Distributors would have the court follow a path through ch. 125 to arrive at their preferred definition. The Distributors' circuitous route begins at Wis. Stat. § 135.02(3)(b), which references the definition of "wholesaler" from § 125.02(21). Pursuant to § 125.02(21), "'[w]holesaler' means a person, other than a brewer, brewpub, manufacturer, or rectifier, who sells alcohol beverages to a licensed retailer or to another person who holds a permit to sell alcohol beverages at wholesale." We are then directed to § 125.02(1), which defines "alcohol beverages" as "fermented malt beverages and intoxicating liquor." Finally, moving to § 125.02(8), we arrive at the definition of "intoxicating liquor" as including "vinous liquors," more commonly known as wine.

¶37 Our interpretation gives effect to the sole definition of "intoxicating liquor" located in ch. 135, one which is located in a statutory section beneath the heading, "Intoxicating liquor dealerships." If the court here were to decide that it is acceptable to effectuate a definition from ch. 125 that is not referenced within ch. 135, there would be no clear stopping point to such a practice.

15

¶38 In sum, we conclude that a wine grantor-dealer relationship is not included within the definition of a dealership in Wis. Stat. § 135.02(3)(b). Wisconsin Stat. § 135.066(2) provides the operative definition of "intoxicating liquor" for purposes of Wis. Stat. ch. 135, and such definition explicitly excludes wine.

¶39 Accordingly, we answer the certified question in the negative and remand the cause to the United States Court of Appeals for the Seventh Circuit.

*By the Court.*—Certified question answered in the negative and cause remanded to the United States Court of Appeals for the Seventh Circuit.

¶40 REBECCA GRASSL BRADLEY, J. (*dissenting*). The legislature unquestionably intended to include wine distributors as dealers under Wis. Stat. ch. 135 and then-Governor Tommy Thompson[1] obviously intended to exclude them. But legislative intent behind enactment of a law——or executive intent motivating the exercise of a veto——cannot govern statutory interpretation. Rather, our analysis must focus on the statutory language itself and "[i]f the meaning of the statute is plain, we ordinarily stop the inquiry." State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. A plain meaning interpretation of ch. 135, giving effect to every word, requires answering the certified question from the Seventh Circuit Court of Appeals in the affirmative: The definition of a "[d]ealership" contained in Wis. Stat. § 135.02(3)(b) includes wine grantor-dealer relationships. The isolated definition in Wis. Stat. § 135.066(2)(a), on which the majority relies to reach the opposite conclusion, applies only in § 135.066. Because the majority's interpretation is wrong, I respectfully dissent.

I

¶41 Wisconsin Stat. ch. 135, also known as the Wisconsin Fair Dealership Law, governs grantor-dealer relationships and "shall be liberally construed and applied to promote" the purposes set forth in Wis. Stat. § 135.025(2), which include, for example, (1) fairness in business relationships between

---

[1] Then-Governor Tommy Thompson will subsequently be referred to as "Governor."

1

dealers and grantors and in their continuation; (2) protection of dealers from grantors who "have superior economic power and superior bargaining power"; and (3) statutory rights and remedies for dealers.[2]

¶42 The question before the court is whether the two wine distributors in this case are "[d]ealers" protected by ch. 135. The wine distributors claim dealership status, while Winebow insists ch. 135 does not apply to wine distributors at all. A textual interpretation of ch. 135 provides a clear answer: the wine distributors are "[d]ealers."

¶43 The analysis necessarily starts in Wis. Stat. § 135.02, which supplies the definitions to be used throughout

---

[2] Wisconsin Stat. ch. 135 comprises eleven subsections. Wisconsin Stat. § 135.01 gives the title of chapter 135. Section 135.02 furnishes the definitions that apply throughout the entirety of ch. 135. Section 135.025 details the purposes of the chapter, requires liberal application to meet those purposes, and prohibits parties from contracting away ch. 135's protections. Section 135.03 explains that dealerships may not be altered or terminated without a showing of good cause. Section 135.04 imposes rules and notice deadlines for termination or changes in a dealership. Section 135.045 governs the repurchase of inventory upon termination of a dealership by the grantor. Section 135.05 discusses the applicability of arbitration agreements in ch. 135. Section 135.06 affords dealers the right to recover attorney fees and obtain injunctive relief in actions against grantors for violating ch. 135. Section 135.065 deems any violation of the chapter by a grantor an irreparable injury for purposes of seeking a temporary injunction. Section 135.066 contains legislative findings specific to intoxicating liquor dealers, defines "[i]ntoxicating liquor," renders this section inapplicable to two types of dealerships, and makes the provisions in this section severable. Section 135.07 declares ch. 135 inapplicable to motor vehicle dealers, insurance businesses, and door-to-door sales of goods or services.

ch. 135. Section 135.02 defines both "Dealer" and "Dealership." Section 135.02 provides, as material:

In this chapter:

(2) "Dealer" means a person who is a grantee of a dealership situated in this state.

(3) "Dealership" means any of the following:

. . . .

(b) A contract or agreement, either expressed or implied, whether oral or written, between 2 or more persons by which a wholesaler, as defined in s. 125.02(21), is granted the right to sell or distribute intoxicating liquor or use a trade name, trademark, service mark, logotype, advertising or other commercial symbol related to intoxicating liquor. This paragraph does not apply to dealerships described in s. 135.066(5)(a) and (b).

(Emphasis added.) To determine whether a "[d]ealership" exists between Winebow and the two wine distributors, we need to know whether the wine distributors are "wholesaler[s]."

¶44 The language of Wis. Stat. § 135.02(3)(b) directs us to the definition of "wholesaler" under Wis. Stat. § 125.02(21).[3] Section 125.02(21) defines "[w]holesaler" as "a person, other than a brewer, brewpub, manufacturer, or rectifier, who sells alcohol beverages to a licensed retailer or to another person who holds a permit to sell alcohol beverages at wholesale." The dispute in this case revolves around whether wine is an "alcohol beverage" as referenced in the "wholesaler" definition.

---

[3] Wisconsin Stat. ch. 125 specifically governs the sale of alcohol beverages in the State of Wisconsin and addresses the importance of the three-tier system of "production, distribution, and sale." See Wis. Stat. § 125.01.

3

Section 125.02(1) defines "alcohol beverage" as "fermented malt beverages and intoxicating liquor" and § 125.02(8) defines "[i]ntoxicating liquor" as:

> [A]ll ardent, spirituous, distilled or <u>vinous</u> liquors, liquids or compounds, whether medicated, proprietary, patented or not, and by whatever name called, containing 0.5 percent or more of alcohol by volume, which are beverages, but does not include "fermented malt beverages".

(Emphasis added.) Everyone agrees that vinous liquors include wine. Construing the text of these statutes leads to the inexorable conclusion that the wine distributors are wholesalers whose agreements with Winebow create dealerships protected by ch. 135.

¶45 The majority decries this interpretive exercise as a "practice" with "no clear stopping point." Majority op., ¶37. While our judicial duty of declaring what a statute says would be easier if each statutory chapter confined its subject matter to that particular chapter, legislative enactments are rarely so linear. On the scale of interpretive complexity, our task falls on the easy end. Inexplicably, the majority maintains the key definition from Wis. Stat. ch. 125 is not referenced within ch. 135, see majority op., ¶37; this is of course inaccurate because Wis. Stat. § 135.02(3)(b) explicitly references Wis. Stat. § 125.02(21), which provides the definition of "[w]holesaler." This cross-reference to ch. 125 (governing alcohol beverages) within the rather brief ch. 135 requires no more than reading three definitions within the same section of ch. 125 (i.e., § 125.02), each of which is explicitly connected.

4

Far from lacking a clear stopping point, the analysis requires us to start with ch. 135 and end in one section of ch. 125. The majority criticizes this statutory construction as "circuitous." Majority op., ¶36. Following a single cross-reference to find the meaning of a defined term is hardly circuitous; regardless of how it is characterized, it is nonetheless the only correct interpretation.

II

¶46 Although the text clearly leads to the conclusion that ch. 135 applies to wine grantor-dealer relationships, the Seventh Circuit certified the question because Wis. Stat. § 135.066(2)(a) provides a seemingly contradictory definition of "[i]ntoxicating liquor."[4]  This conflicting definition, however, does not override the definition of "[i]ntoxicating liquor" within Wis. Stat. § 125.02(8).

¶47 First, the definition of intoxicating liquor in Wis. Stat. § 135.066 contains no language suggesting that its definition applies throughout ch. 135.  In contrast, the definition of "intoxicating liquor" embedded within § 135.02(3)(b) resides in the "definitions" section of ch. 135, which specifically says that the definitions apply "in this chapter"——that is, ch. 135.  Because the definition of intoxicating liquor that includes wine——which is rooted in Wis. Stat. § 135.02(3)(b)——applies across the chapter, it is

---

[4] Wisconsin Stat. § 135.066(2)(a) provides:  "'Intoxicating liquor' has the meaning given in s. 125.02(8) minus wine."

5

textually insupportable to apply § 135.066's definition of "intoxicating liquor" beyond the section it inhabits.

¶48 Second, in order to give effect to all the words used within ch. 135, Wis. Stat. § 135.066's definition must be limited to that particular section where it appears. Allowing § 135.066's definition to apply anywhere else would render the "[i]n this chapter" language of Wis. Stat. § 135.02 superfluous. If definitions outside of § 135.02 also applied throughout the chapter, despite the absence of express language so directing, § 135.02's language rendering its definitions applicable "in this chapter" would amount to a bootstrap provision at best, merely emphasizing, but not controlling, the operation of ch. 135's definitions. Because basic tenets of statutory construction dictate avoiding surplusage, the majority errs in its interpretation by creating overlapping definitions. See Kelley Co. v. Marquardt, 172 Wis. 2d 234, 250, 493 N.W.2d 68 (1992) (we are to construe a statute, where possible, so that no part of it is rendered superfluous); see also Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012) ("If possible, every word and every provision is to be given effect (verba cum effectu sunt accipienda[ ]). None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence."). The majority's creation of overlapping but contradictory definitions requires it to select one and ignore the other. This consequence is objectionable but avoidable by giving effect to both definitions, as the text

6

directs us: one applies throughout the chapter and the other applies only within its own section.

¶49 Third, it is Wis. Stat. § 135.02(3) that defines whether a relationship between a grantor and a dealer is a "[d]ealership." Wisconsin Stat. § 135.066 does not.

¶50 The majority concludes that Wis. Stat. § 135.066's definition of "[i]ntoxicating liquor" must apply across the chapter, thereby removing ch. 135's protections from the two wine distributors in this case, in order to give the definition meaning. I disagree. The definition of "[i]ntoxicating liquor" in § 135.066 retains a function even if limited to its specific section of ch. 135. It applies to the legislative findings of sub. (1), the non-applicability provisions of sub. (5), and the severability part of sub. (6).

¶51 The effect of confining the Wis. Stat. § 135.066(2)(a) definition of "[i]ntoxicating liquor" to § 135.066 may contravene the Governor's intention in excising wine from that definition. Regardless of what he intended in exercising his partial veto power, this is what the Governor wrote. We give effect to the text, not the intentions of its drafters. As a result, under sub. (1), the legislative findings regarding the three-tier system for distributing intoxicating liquor do not apply to wine dealerships. Subsection (5) renders § 135.066 inapplicable to certain "intoxicating liquor" dealerships whose production of "intoxicating liquor" does not exceed certain thresholds in gallons or revenue. Because wine was struck from the "intoxicating liquor" definition in § 135.066(2)(a), the

7

non-applicability provision in sub. (5) does not apply to wine dealerships. Finally, sub. (6) makes the provisions of § 135.066 severable; under Wis. Stat. § 990.001(11), this means that if one section is declared invalid, the remaining sections shall stand unaffected. Restricting the application of the § 135.066(2)(a) definition of "intoxicating liquor" to § 135.066 may not be what the Governor intended, but it is what he left of the legislation in exercising his partial veto power. And it is the text, not intentions, that reigns supreme. State ex rel. Kalal, 271 Wis. 2d 633, ¶41 ("a 'policy favoring conventional meanings and general understandings over obscurely evidenced intention of the legislators is supported in the oft-repeated premise that intention must be determined primarily from the language of the statute itself'" (quoting 2A Norman J. Singer, Sutherland Statutory Construction § 45.08, at 40 (6th ed. 2000))); Scalia & Garner, supra ¶9, at 56 ("The words of a governing text are of paramount concern, and what they convey, in their context, is what the text means.").

¶52 The majority emphasizes the history of these statutes before enactment by including the full text proposed by the legislature, the strikethroughs made by the Governor's veto pen, and the Governor's letter explaining the basis for his substantial edits. Placing the focus on these non-textual considerations improperly influenced the majority's statutory construction. "It is always perilous to derive the meaning of an adopted provision from another provision deleted in the drafting process." District of Columbia v. Heller, 554 U.S.

8

570, 590 (2008). This caution applies no less to provisions deleted by the Governor exercising his veto power.

¶53 The majority underscores the legislature's ability to amend the law if it in fact disagreed with certain treatises' take on the effect of the Governor's partial vetoes to remove wine wholesalers from the fair dealership law. This court has explained that legislative acquiescence is a slim reed upon which to support a judicial construction of a statute because "[n]umerous variables, unrelated to conscious endorsement of a statutory interpretation, may explain or cause legislative inaction." Wenke v. Gehl Co., 2004 WI 103, ¶33, 274 Wis. 2d 220, 682 N.W.2d 405; see also Johnson v. Transp. Agency, 480 U.S. 616, 672 (1987) (Scalia, J., dissenting) ("[I]t [is] impossible to assert with any degree of assurance that congressional failure to act represents (1) approval of the *status quo,* as opposed to (2) inability to agree upon how to alter the *status quo,* (3) unawareness of the *status quo,* (4) indifference to the *status quo,* or even (5) political cowardice."). Our judicial duty is to say what the law is, not to surmise meaning from legislative quiescence. Legislative inaction cannot support an interpretation of the statute that is contrary to the plain meaning of the language used in the statute.

### III

¶54 Applying a textual analysis of the language in ch. 135 leads to but one conclusion: wine distributors are wholesalers as that term is defined in Wis. Stat. § 135.02. The majority

9

fixates on what the Governor struck from the legislation rather than what remained, thereby giving effect to what the Governor intended rather than what he actually signed into law. Reading the pertinent provisions of ch. 135 without the obfuscating portions that did not survive the Governor's veto dissolves any ambiguity. The majority adopts a statutory construction that rewrites ch. 135 by subtracting language from it, rather than giving effect to every word. The majority errs. I would answer the certified question affirmatively, and therefore, respectfully dissent.

¶55 I am authorized to state that Justices SHIRLEY S. ABRAHAMSON and DANIEL KELLY join this dissent.

10