*391 ANN WALSH BRADLEY, J.
¶ 1 Petitioners, Patti and David Roberts, seek review of an unpublished court of appeals decision that affirmed the circuit court's order for summary judgment, dismissing their claims.[1] The court of appeals determined that Wisconsin's recreational immunity statute barred the petitioners' claims because Patti Roberts was engaged in the recreational activity of hot air ballooning at the time she was injured.[2]
¶ 2. Roberts argues that the respondents, Sun-dog Ballooning, LLC, Kerry Hanson, Jodi Hanson, and T.H.E. Insurance Company (collectively "Sundog") are not entitled to immunity pursuant to Wis. Stat. § 895.52 because Sundog was not an owner under the statute. She contends that Sundog was neither an "occupier" of the land nor was the hot air balloon "property."[3]
¶ 3. In reply, Sundog asserts that even if it were not entitled to immunity under Wis. Stat. § 895.52, Roberts' claims are barred because she signed a waiver of liability form.
¶ 4. We conclude that Sundog is not entitled to recreational immunity pursuant to Wis. Stat. § 895.52 because it is not an owner under the statute. Sundog was not an "occupier" of the land and the hot air balloon was not "property" because it was not a "struc *392 ture."[4] Finally, we determine that Sundog's waiver of liability form violates public policy and is unenforceable as a matter of law. Accordingly, we reverse the court of appeals and remand to the circuit court for further proceedings.
1 — 1
f 5. The relevant facts of this case are undisputed. Patti J. Roberts was injured at a charity event sponsored by Green Valley Enterprises ("Green Valley"). Beaver Dam Conservationists, LLC ("the Conservationists") owned the shooting range where the charity event was held.
¶ 6. Sundog Ballooning, LLC was the owner and operator of a hot air balloon providing tethered rides at the event. Kerry and Jodi Hanson, the owners of Sundog, donated hot air balloon rides to promote Green Valley's charity event.
f 7. On the day of the event, Sundog set up a display, a sign-up table and a waiting area for the ride. The hot air balloon was tethered to two trees and a pick-up truck. During rides, the balloon operator raised the balloon to the length of the ropes and then lowered it back to the ground.
¶ 8. Patti Roberts and her family watched the balloon rides and then entered the line to take a ride. *393 While in line, Sundog gave Roberts a waiver of liability form that she was required to sign prior to riding in the hot air balloon. Roberts signed the waiver form, but never returned it to Sundog. The signed waiver form was found on the event grounds after Roberts sustained her injuries.
¶ 9. The liability waiver form states in part:
I expressly, willing, and voluntarily assume full responsibility for all risks of any and every kind involved with or arising from my participation in hot air balloon activities with Company whether during flight preparation, take-off, flight, landing, travel to or from the take-off or landing areas, or otherwise.
Without limiting the generality of the foregoing, I hereby irrevocably release Company, its employees, agents, representatives, contractors, subcontractors, successors, heirs, assigns, affiliates, and legal representatives (the "Released Parties") from, and hold them harmless for, all claims, rights, demands or causes of action whether known or unknown, suspected or -unsuspected, arising out of the ballooning activities ....
¶ 10. After signing the form, Roberts waited in line for 20 to 30 minutes. During this time, strong winds caused one of the balloon's tether lines to snap. As a result, the untethered balloon moved toward the spectators in line. Roberts was injured when she was struck by the balloon's basket and knocked to the ground.
¶ 11. The evidence submitted to the circuit court demonstrated that defendant Kerry Hanson, the balloon operator, had limited experience with tethered ballooning before giving rides at Green Valley's event. Hanson testified in his deposition that he should have *394 obtained information regarding weather fronts in the area. Had he known about the weather front on the day Roberts was injured, Hanson testified that he would have suspended the ride.
| 12. Hot air ballooning is governed by FAA guidelines and rules. See, e.g., Fed. Aviation Admin., U.S. Dep't. of Transp., Pub. No. FAA-H-8083-11A, Balloon Flying Handbook 7-13 (2008). The FAA's safety recommendations instruct the balloon operator to plan for the failure of one or more of the tethered lines and have a backup plan for safety. See id. at 7-14. In addition, the operator should organize participants "far back" from the balloon and tether lines. Id. At his deposition, Hanson agreed that had he moved the sign-up table and waiting line further back from the balloon, Roberts would not have been injured.
¶ 13. Roberts filed a lawsuit against Sundog, alleging that its negligence caused her injuries. Sun-dog moved the circuit court for summary judgment, arguing that it is entitled to immunity under Wis. Stat. § 895.52 and that Roberts' claims were barred by the waiver of liability form that she signed.
¶ 14. The circuit court granted Sundog's summary judgment motion, dismissing Roberts' claims and concluding that Sundog was entitled to immunity under Wis. Stat. § 895.52. It also determined that the waiver of liability form Roberts signed was valid as a matter of law, although an issue of fact remained as to whether she had accepted the terms.
¶ 15. On appeal, Roberts argued that Sundog is not entitled to immunity because her injury was not related to a condition associated with the land. Roberts asserted that under Linville v. City of Janesville, 184 Wis. 2d 705, 516 N.W.2d 427 (1994) and Kosky v. Int'l Ass'n of Lions Clubs, 210 Wis. 2d 463, 565 N.W.2d 260 *395 (Ct. App. 1997), no immunity attaches for negligent conduct unassociated with the land.
¶ 16. The court of appeals rejected Roberts' argument, determining that it was "based on a misreading of the case law . . . which has no application to the facts of this case."[5] See Roberts v. T.H.E. Ins. Co., No. 2014AP1508, unpublished slip op., ¶ 17 (Wis. Ct. App. Mar. 26, 2015). It explained that this was "the only argument that Roberts makes directed to the application of Wis. Stat. § 895.[52]." Id., ¶ 22. The court of appeals did not address the validity of the liability waiver form because its decision as to immunity disposed of the appeal. Id., ¶ 2 n.2.
¶ 17. Before this court, Roberts renews her argument that Sundog's negligence was not connected to a condition associated with the land. Because this court ordered briefing on an additional issue, she also asserts that Sundog is not entitled to immunity under Wis. Stat. § 895.52 because it is not an owner under the statute. Roberts argues that Sundog was not an " occupier" of the land and that the hot air balloon was *396 not "property" because it was not a "structure." Sundog replies that even if it is not entitled to immunity under Wis. Stat. § 895.52, Roberts' claims are barred because she signed a waiver of liability form.
HH hH
¶ 18. In this case we are asked to review the circuit court's grant of summary judgment. We review grants of summary judgment applying the same methodology employed by the circuit court. Belding v. Demoulin, 2014 WI 8, ¶ 13, 352 Wis. 2d 359, 843 N.W.2d 373. Summary judgment is appropriate if "there is no genuine issue as to any material fact and [] the moving party is entitled to [] judgment as a matter of law." Wis. Stat. § 802.08(2).
¶ 19. Here, there is no genuine issue of material fact. Accordingly, we focus on whether the application of Wis. Stat. § 895.52 bars Roberts' claims. Statutory interpretation presents a question of law that we review independently of the determinations rendered by the circuit court and the court of appeals. State v. Dinkins, 2012 WI 24, ¶ 28, 339 Wis. 2d 78, 810 N.W.2d 787.
¶ 20. In interpreting a statute we begin by examining its language, giving words and phrases their common, ordinary, and accepted meaning. State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶¶ 45-46, 271 Wis. 2d 633, 681 N.W.2d 110. Statutory language must be interpreted reasonably to avoid absurd or unreasonable results. Id., ¶ 46.
*397 ¶ 21. When the legislature has expressly stated the purpose of a statute, the purpose is relevant to the plain meaning interpretation of the statute. See id., ¶ 48." [A] plain-meaning interpretation cannot contravene a textually or contextually manifest statutory purpose." Id., f 49.
¶ 22. In examining an exculpatory contract, we likewise apply the same summary judgment methodology as employed by the circuit court. See Richards v. Richards, 181 Wis. 2d 1007, 1010-11, 513 N.W.2d 118 (1994) (citing Dobratz v. Thompson, 161 Wis. 2d 502, 513, 468 N.W.2d 654 (1991)). The validity of an exculpatory contract is reviewed as a matter of law. Id. at 1011.
rH I — I 1 — 1
¶ 23. We begin our analysis with a brief explanation of what is not in dispute. Neither party disputes that Roberts was participating in a recreational activity at the time she was injured because ballooning is listed in the statutory definition of "recreational activity." Wis. Stat. § 895.52(l)(g) defines "recreational activity" as: [A]ny outdoor activity undertaken for the purpose of exercise, relaxation or pleasure, including practice or instruction in any such activity. "Recreational activity" includes hunting, fishing, trapping, camping, . . . ballooning, hang gliding, hiking . . . ." (emphasis added).
¶ 24. Furthermore, " [t]he case law is clear that a spectator who attends a recreational activity is engaged in a recreational activity." Meyer v. School Dist. *398 Of Colby, 226 Wis. 2d 704, 710, 595 N.W.2d 339 (1999); see also Linville, 184 Wis. 2d at 717 (concluding that preparation for a recreational activity that takes place at a recreational facility that is open for public use is a "recreational activity" as defined by Wis. Stat. § 895.52(g)). Given that Roberts was on recreational land open to the public, watching the balloon rides as a spectator, and preparing for the balloon ride by waiting in line, she was engaged in a "recreational activity" as defined by Wis. Stat. § 895.52(g).
A.
¶ 25. Although Roberts does not dispute that she was engaged in a recreational activity, she does contest the issue of immunity. Roberts argues that Sundog is not entitled to immunity as an occupier of the property where she was engaged in a recreational activity.
¶ 26. The recreational immunity statute Wis. Stat. § 895.52 provides:
(2) NO DUTY; IMMUNITY FROM LIABILITY.
(a) Except as provided in subs. (3) to (6), no owner and no officer, employee or agent of an owner owes to any person who enters the owner's property to engage in a recreational activity: SU221. A duty to keep the property safe for recreational activities. SU222. A duty to inspect the property, except as provided under s. 23.115(2). SU223. A duty to give warning of an unsafe condition, use or activity on the property.
(b) Except as provided in subs. (3) to (6), no owner and no officer, employee, or agent of an owner is liable for the death of, any injury to, or any death or injury caused by, a person engaging in a recreational activity on the owner's property ....
*399 ¶ 27. Wis. Stat. § 895.52(l)(d)l defines an "owner" as "[a] person, including a governmental body or nonprofit organization, that owns leases or occupies property." Wis. Stat. § 895.52(l)(f) further defines "property" as "real property and buildings, structures and improvements thereon . . . ."
1 28. The legislative purpose of the recreational immunity statute is set forth in 1983 Wis. Act 418, § 1. Its stated purpose is to limit liability in order to encourage property owners to open their lands to the public:
The legislature intends by this act to limit the liability of property owners toward others who use their property for recreational activities under circumstances in which the owner does not derive more than a minimal pecuniary benefit. While it is not possible to specify in a statute every activity which might constitute a recreational activity, this act provides examples of the kinds of activities that are meant to be included, and the legislature intends that, where substantially similar circumstances or activities exist, this legislation should be liberally construed in favor of property owners to protect them from liability.... 1983 Wis. Act 418, § 1.
As our cases have explained, "the impetus for this law is the continual shrinkage of the public's access to recreational land in the ever more populated modern world." Hall v. Turtle Lake Lions Club, 146 Wis. 2d 486, 489, 431 N.W.2d 696 (Ct. App. 1988).
¶ 29. In reply, Sundog argues that it is entitled to recreational immunity because Roberts was injured at an event similar to those in prior cases. Sundog asserts that it is entitled to immunity as an "occupier" of the land, for the same reasons that the producer of a fair or event qualifies for recreational immunity. Prior cases *400 interpreting Wisconsin's recreational immunity law have concluded that the producer of a fair or event "occupied" property. See, e.g., Id., at 490; Lee v. Elk Rod & Gun Club, Inc., 164 Wis. 2d 103, 106, 473 N.W.2d 581 (Ct. App. 1991); Weina v. Atlantic Mut. Ins. Co., 179 Wis. 2d 774, 777 n.2, 508 N.W.2d 67 (Ct. App. 1993).
¶ 30. As Sundog's counsel aptly argued, Wisconsin courts have concluded private organizations hosting an event on land they did not own are entitled to recreational immunity. In Hall, the plaintiff was injured when he stepped in a hole on the grounds of the Turtle Lake Village Park during a fair sponsored by the Turtle Lake Lions Club. 146 Wis. 2d at 487. The Lion's Club was not the titled owner of the land on which it held the fair. Id. at 490. The court of appeals concluded that the Lions Club was entitled to recreational immunity as a "landowner" that allowed Hall entry for "recreational activity." Id. at 487-89.
¶ 31. Likewise, in Lee, the plaintiff was injured when he slipped and fell on icy ground beneath a tent erected by the Elk Rod & Gun Club for a fishing contest on Bugle Lake. 164 Wis. 2d at 105. Lee explained that "[t]he club, as an occupant of the city park land, is treated as a landowner for purposes of recreational immunity." Id. at 107 (citing Hall, 146 Wis. 2d at 490-91).
¶ 32. Again, in Weina, the plaintiff was injured playing softball at a church picnic held at a public park. 179 Wis. 2d at 776. The plaintiff sued both the church and the teammate who hit the injurious baseball. Id. Granting summary judgment in favor of the church, the circuit court denied the teammate's motion for summary judgment. Id. at 77 n.l. The court of *401 appeals affirmed the circuit court's judgment that the church, as the event organizer, was entitled to immunity. Id. at 779.
¶ 33. This case is different from prior cases, however, because Roberts did not bring claims against the event producer or owner of the property. Green Valley Enterprises, not Sundog, produced the charity event where Roberts was injured. The Conservationists, not Sundog, was the owner of the property where the event took place. None of the prior cases interpreting Wis. Stat. § 895.52 has granted immunity to a third party not responsible for opening up the land to the public.[6]
¶ 34. The distinction between Sundog and the producer of a fair or event is supported by case law analyzing the definition of "occupy" in the context of the statute's policy. In Doane v. Helenville Mut. Ins. Co., 216 Wis. 2d 345, 355, 575 N.W.2d 734 (Ct. App. 1998), the court of appeals held that the owner of an ice shanty was not an occupier under Wis. Stat. § 895.52. As Doane explained, "occupy" is defined as "to take and hold possession." Id. at 354 (citing Webster's New Collegiate Dictionary 794 (8th ed. 1974)). The term "occupy," as it is used in Wis. Stat. § 895.52, has been defined as "requiring a degree of permanence, as opposed to mere use." Id. (citations ommitted).
*402 ¶ 35. Underlying the Doane decision was the same statutory policy at issue here. As Doane explained, to define the owner of the ice shanty as an occupier "would not further the policy which underlies the statute, i.e., of opening as much property as possible for recreational use, because the lake was already held in trust for public recreational purposes, such as fishing." Id. at 355. Here, as in Doane, defining Sundog as an " occupier" would not further the policy underlying the statute because the Conservationists' property was already open for public recreational purposes.
¶ 36. The Linville court also explained that we must consider whether immunity will encourage landowners to open the land for public use:
The benefits of granting immunity, i.e., encouraging landowners to open their lands to the public, comes from immunizing people or municipalities in their capacities as landowners .... Extending immunity to landowners for negligently performing in a capacity unrelated to the land. . . will not contribute to a landowner's decision to open the land for public use.
184 Wis. 2d 705.
¶ 37. Here, it was Green Valley and the Conservationists — not Sundog — that were responsible for opening the land to the public. The Conservationists allowed Green Valley to host an event on the land. Green Valley was responsible for organizing the event and bringing people onto the land. Sundog provided hot air balloon rides on land that was owned by the Conservationists and occupied by Green Valley. Immunizing Sundog would have no effect on whether the public had access to private land, because Sundog is not responsible for opening the land to the public.
¶ 38. We also find Linville instructive in determining the logical stopping point for immunity. In *403 Linville, the court analyzed whether granting immunity to city paramedics could create limitless immunity for all medical services provided for injuries sustained while recreating. 184 Wis. 2d 705. "Such services could conceivably take place days or even weeks after the recreational activity, at facilities far removed from the site of recreation, and by persons in no way connected to the land on which the accident occurred." Id. at 720. "Such a result is absurd, leaves immunity limitless, and therefore could not have been intended by the legislature." Id.
¶ 39. Wis. Stat. § 895.52 "was not enacted to provide indiscriminate immunity for landowners without regard to possible consequences." Id. at 719 (quoting Ervin v. City of Kenosha, 159 Wis. 2d 464, 477, 464 N.W.2d 654 (1991)). Extending immunity to Sundog could lead to limitless immunity. Sundog is not the owner of the land. It is not occupying the land as an event organizer and is therefore not responsible for opening up the land to the public. If Sundog — who has no connection to the land — is granted immunity, there will be no stopping point to recreational immunity.
¶ 40. For example, what if Roberts brought a claim against the manufacturer of the hot air balloon that injured her? What if the tether that broke loose was due to a fault in the manufacture of the balloon, rather than the wind? Should the balloon manufacturer, which had no connection to opening the land to the public, be Immunized because ballooning is a recreational activity?
¶ 41. Granting immunity to third parties that are not responsible for opening up the land to the public is unsupported by our prior case law. In addition, it would create an absurd result with no logical *404 stopping point that does nothing to further the legislative purpose of the statute. Accordingly, we conclude that Sundog is not entitled to recreational immunity under Wis. Stat. § 895.52 because it was not an "occupier" of the land.
B.
¶ 42. Next, Sundog argues that it is entitled to immunity not only as an "occupier" of real property, but also as an owner of "property" because the hot air balloon is a structure pursuant to Wis. Stat. § 895.52(l)(f). "Property" means real property and buildings, structures and improvements thereon. Wis. Stat. § 895.52(l)(f).
¶ 43. The term "structure" is not defined in Wis. Stat. § 895.52, and is therefore given its common and ordinary meaning. Peterson v. Midwest Sec. Ins. Co., 2001 WI 131, ¶ 16, 248 Wis. 2d 567, 636 N.W.2d 727. A "structure" is "something constructed," or "something made up of a number of parts that are held or put together in a particular way." Id. (citing American Heritage Dictionary of the English Language, 1782 (3d ed. 1992)). "Structure" is also defined as "[a]ny construction, or any production or piece of work artificially built up or composed of parts joined together in some definite manner." Id. (citing Black's Law Dictionary, 1424 (6th ed. 1991)).
¶ 44. Sundog relies on Peterson, in which this court held that the owner of a tree stand was entitled to immunity as the owner of a "structure" on real property. Id., ¶ 4. Peterson adopted the court of appeals' decision in Doane. Peterson, 248 Wis. 2d 567, ¶ 20. The Doane court identified three categories of *405 property that qualify owners for immunity: (1) real property; (2) buildings, structures and improvements thereon; and (3) waters of the state. Doane, 216 Wis. 2d at 352. Sundog argues that like the tree stand in Peterson, the hot air balloon is a structure because it was constructed or put together in a particular way and made up of parts joined together.
¶ 45. Although it may have been made up of parts joined together, the hot air balloon ride was not constructed on real property. In Peterson, the tree stand was permanent and built or constructed on the real property. See Peterson, 248 Wis. 2d 567, ¶¶ 5-7. The hot air balloon in this case was transient and designed to be moved at the end of the day. It was also not designed to remain in one place. The balloon was tethered to two trees and a pick-up truck because of the manner in which Sundog was using it on the day of the event. Thus, we conclude that the hot air balloon is not a structure as that term is applied in Wis. Stat. § 895.52(l)(f).
¶ 46. Accordingly, we conclude that Sundog is not entitled to recreational immunity under Wis. Stat. § 895.52 because it is not an owner under the statute. Sundog was not an "occupier" of the land and the hot air balloon was not "property" because it is not a "structure."
> 1 — I
¶ 47. Having determined that Sundog is not entitled to immunity under Wis. Stat. § 895.52, we must address whether Roberts' claims are barred by Sun-dog's exculpatory release. Sundog argues that the waiver of liability form that Roberts signed is valid under Wisconsin law.
*406 ¶ 48. Wisconsin case law does not favor exculpatory agreements. See, e.g., Atkins v. Swimwest Family Fitness Center, 2005 WI 4, ¶ 12, 277 Wis. 2d 303, 691 N.W.2d 334. "While this court has not held that an exculpatory clause is invalid per se, we have held that such a provision must be construed strictly against the party seeking to rely on it." Id., ¶ 12 (citing Yauger v. Skiing Enters., Inc., 206 Wis. 2d 76, 81, 557 N.W.2d 60 (1996); Merten v. Nathan, 108 Wis. 2d 205, 210-11, 321 N.W.2d 173 (1982)).
¶ 49. Our analysis of an exculpatory contract begins with examining the facts and circumstances of the agreement to determine if it covers the activity at issue. Atkins, 277 Wis. 2d 303, ¶ 13 (citing Arnold v. Shawano County Agric. Soc'y, 111 Wis. 2d 203, 211, 330 N.W.2d 773 (1983), overruled on other grounds). If the contract covers the activity, we proceed to a public policy analysis, "which remains the 'germane analysis' for exculpatory clauses." Id., ¶ 13 (citing Yauger, 206 Wis. 2d at 86). "We generally define public policy as 'that principle of law under which freedom of contract or private dealings is restricted by law for the good of the community.'" Id., ¶ 14 (quoting Merten, 108 Wis. 2d at 213).
¶ 50. This court has found an exculpatory agreement to be invalid if it contains misrepresentations, if it too broadly defines the location and actions covered, or if it is ambiguous and uncertain. See, e.g., Merten, 108 Wis. 2d at 214-15; see also Arnold, 111 Wis. 2d at 211-13; Dobratz, 161 Wis. 2d at 526. Our prior decisions have also set forth the factors to apply in analyzing whether a contract is void as a matter of law.
*407 ¶ 51. In Richards, 181 Wis. 2d 1007, the plaintiff was injured while accompanying her husband on a trip. The waiver in Richards was both an application for permission to be a passenger and a release of all claims against the trucking company. Id. at 1012. Richards held that the contract was void as against public policy because: (1) the contract served two purposes which were not clearly identified or distinguished; (2) the release was extremely broad and all-inclusive; and (3) the release was in a standardized agreement printed on the Company's form, offering little or no opportunity for negotiation or free and voluntary bargaining. Id. at 1011.
¶ 52. In Yauger, 206 Wis. 2d 76, an 11-year old skier was killed when she struck a concrete ski lift tower pylon. Prior to the ski season, her father signed an "application" for a season family lift ticket. Id. at 79. The application stated: "I agree that [] [t]here are certain inherent risks in skiing and that we agree to hold [the ski resort] harmless on account of any injury incurred... on the [ski resort] premises." Id. at 79. "Inherent risks" and "premises" were not defined. Id. at 84-85.
¶ 53. The Yauger court unanimously concluded that the agreement was void as against public policy because: (1) it failed to clearly, unambiguously, and unmistakably explain to the signatory that he was accepting the risk of Hidden Valley's negligence; and (2) the form when considered in its entirety failed to alert the signer to the nature and significance of the document being signed. Id. at 78.
¶ 54. More recently in Atkins, this court considered the enforceability of an exculpatory agreement after a swimmer drowned in a lap pool at a fitness center. Atkins, 277 Wis. 2d 303. As a condition of being *408 allowed to use the center, the swimmer had to complete a guest registration and waiver release statement form. Id,., ¶ 3. The form was preprinted on a five and one-half inch square card, and the entire card was printed in capital letters of the same size, font, and color. Id., ¶ 4.
¶ 55. Atkins held that the waiver was invalid, noting that "Wisconsin case law does not favor [exculpatory] agreements," and "such a provision must be construed strictly against the party seeking to rely on it." Id., ¶ 12. The Atkins court adopted a combination of the Yauger and Richards factors in its decision: (1) the waiver was overly broad and all-inclusive; (2) the form served two functions and did not provide the signer adequate notification of the waiver's nature and significance; and (3) there was little or no opportunity to bargain or negotiate in regard to the exculpatory language in question. Id., ¶ 18; see also Alexander T. Pendleton, Enforceable Exculpatory Agreements: Do They Still Exist?, 78 Wis. Law. 16, 46 (Aug. 2005).
¶ 56. Turning to the release at issue in this case, it is undisputed that Sundog required Roberts to sign a waiver prior to riding in the hot air balloon. Roberts signed the waiver while she was waiting in line for the ride, but never returned it. The signed waiver was found on the event grounds after she was injured by the hot air balloon.
¶ 57. Sundog argues that Roberts read the release, understood its importance, and understood she was waiving her right to bring a negligence claim. It also asserts that Roberts had the opportunity to bargain and ask questions, but failed to do so. Roberts counters that she never accepted the liability waiver form because she never returned it to Sundog. She also *409 argues that the waiver is void as a matter of law because it violates public policy.
¶ 58. We agree with Roberts that the waiver of liability form is unenforceable as a matter of law because it fails to satisfy the factors set forth in our prior case law. Because the waiver is void as a matter of law, we need not address the question of whether Roberts accepted the agreement.[7]
¶ 59. First, Sundog's exculpatory waiver is overly broad and all-inclusive. As our prior cases have explained, an agreement cannot be so broad "that it would absolve [the defendant] from any injury to the [plaintiff! for any reason." Richards, 181 Wis. 2d at 1015 (citing College Mobile Home Park & Sales v. Hoffman, 72 Wis. 2d 514, 521-22, 241 N.W.2d 174 (1976)).
¶ 60. The waiver in this case would absolve Sundog for any activity for any reason, known or unknown:
I expressly, willing, and voluntarily assume full responsibility for all risks of any and every kind involved with or arising from my participation in hot air balloon activities with Company whether during flight preparation, take-off, flight, landing, travel to or from the take-off or landing areas, or otherwise.
Without limiting the generality of the foregoing, I hereby irrevocably release Company, its employees, agents, representatives, contractors, subcontractors, successors, heirs, assigns, affiliates, and legal representatives (the "Released Parties") from, and hold *410 them harmless for, all claims, rights, demands or causes of action whether known or unknown, suspected or unsuspected, arising out of the ballooning activities .. .
Not only is the waiver overly broad, it is not clear whether waiting in line for the ride is something Roberts would have contemplated as being covered by the waiver, especially because she was not required to return the waiver before she got into the line.
¶ 61. Second, the release was a standard agreement printed on the company's form, offering Roberts no opportunity to bargain or negotiate in regard to the exculpatory language in question. See Richards, 181 Wis. 2d at 1011. "Freedom of contract is premised on a bargain freely and voluntarily made through a bargaining process that has integrity." Id. at 1016.
¶ 62. Sundog concedes that the waiver of liability was a standard form. In order to ride the balloon, Roberts was told she would have to sign "this document." Sundog did not discuss the content of the waiver or any of the risk associated with ballooning activities or watching others ride with Roberts. There was also no pre-flight meeting as referenced in the agreement. Roberts was not asked if she had any complaints or concerns with the waiver and she did not have an opportunity to negotiate the terms of the waiver.
¶ 63. Thus, the liability waiver form is void as a matter of law. It is overly broad, printed on a standard form, and Sundog did not provide Roberts with an opportunity to bargain over the terms of the contract. As our prior case law demands, we will not uphold a waiver of liability that violates public policy.
*411 V.
¶ 64. In sum, we conclude that Sundog is not entitled to recreational immunity under Wis. Stat. § 895.52 because it is not an owner under the statute. Sundog was not an "occupier" of the land and the hot air balloon was not "property" because it was not a "structure."
¶ 65. Accordingly, we reverse the court of appeals and remand to the circuit court for further proceedings.
By the Court. - The decision of the court of appeals is reversed and the cause is remanded to the circuit court for further proceedings.

 Roberts v. T.H.E. Ins. Co., No. 2014AP1508, unpublished slip op., (Wis. Ct. App. Mar. 26, 2015) (affirming order of summary judgment entered by the circuit court for Dodge County, Joseph G. Sciascia, J., presiding).

 Although Patti's husband, David Roberts, is also a petitioner, we will refer to Patti Roberts as the lone petitioner for ease of discussion.

 All subsequent references to the Wisconsin Statutes are to the 2013 — 14 version unless otherwise indicated.

 Roberts also argues that Sundog is not entitled to immunity under Wis. Stat. § 895.52 because Sundog's negligence was not associated with a condition of the land. We need not reach this argument because we conclude that Sundog was not an owner under the statute. The issue of whether a party's negligence is associated with a condition of the land applies only if that party is an owner under the statute. See, e.g., Linville v. City of Janesville, 184 Wis. 2d 705, 719, 516 N.W.2d 427 (1994); see also Kosky v. Int'l Ass'n of Lions Clubs, 210 Wis. 2d 463, 475, 565 N.W.2d 260 (Ct. App. 1997).

 This Court has previously expressed its concern that the recreational immunity statue is often difficult to apply and has recommended that the legislature reexamine this statute. See, e.g., Auman v. School Dist. Of Stanley-Boyd, 2001 WI 125, ¶ 11, 248 Wis. 2d 548, 635 N.W.2d 762 ("This court has wrestled with applying the recreational immunity statute . . . since its enactment. . . . We continue to be frustrated in our efforts to state a test that can be applied easily because of the seeming lack of basic underlying principles in the statute."); see also Urban v. Grasser, 2001 WI 63, ¶ 12, 243 Wis. 2d 673, 627 N.W.2d 511 ("Circuit courts, the court of appeals, and this court have wrestled with recreational immunity since the legislature first provided for such immunity under the law. We have all been frustrated by the seeming lack of basic underlying principles in our efforts to state a test that can be easily applied.").

 Wis. Stat. § 895.52(2) grants immunity to officers, employees, or agents of an owner. Because the parties in this case did not argue or brief the issue of whether Sundog was an officer, employee, or agent of either the Conservationists or Green Valley, we do not address it. We need not address issues that have not been raised or argued by the parties. See, e.g., State v. Steffes, 2013 WI 53, ¶ 28, 347 Wis. 2d 683, 832 N.W.2d 101.

 Additionally, we do not address whether the question of Roberts' "acceptance" presents a question of fact or law here.