BRASH, J.[1]
¶ 1 B.D.S. appeals an order of the trial court terminating his parental rights of J.S., as well as an order denying his postdispositional motion to withdraw his no contest plea. In that motion and in this appeal, B.D.S. argues that he should be permitted to withdraw his no contest plea because he did not understand the consequences of the plea, and thus it was not knowing, intelligent, and voluntary. He further argues that the trial court erred in denying his motion without an evidentiary hearing. We affirm.
BACKGROUND
¶ 2 B.D.S. is the presumed father of J.S., whose date of birth is July 19, 2007. B.D.S. is married to J.S.'s mother, R.D.S.[2] They were married in December 1998 and remained married throughout these proceedings. B.D.S. and R.D.S. have three other children; J.S. is the youngest.
¶ 3 The Bureau of Milwaukee Child Welfare (BMCW)[3] has had a long history of involvement with this family. The BMCW began receiving referrals for the family in 1994-the year the oldest child was born. Various allegations have been investigated over the years, including profound neglect, physical abuse of all of the children, and sexual abuse of the oldest child. All of the children have special needs at varying levels, and both parents have mental health issues, including bipolar disorder.
¶ 4 J.S. was first found to be a child in need of protection or services in 2009. The BMCW had received several referrals in 2009 from the older children's school regarding suspected physical abuse, extremely poor hygiene of the children, and behavior issues. This culminated in an unannounced home visit by the BMCW in May 2009. During that visit, B.D.S. became very angry and could not be calmed down. He declared that he was going to go to a friend's house to get his gun and "bring it home for his own safety." B.D.S. had to be restrained by police, and he was transported to the Milwaukee County Mental Health Complex for evaluation. All of the children were taken into custody by the BMCW due to the multiple allegations of neglect and physical abuse and the continuing need for involvement by the BMCW.
¶ 5 Child in Need of Protection and Services (CHIPS) petitions were filed with regard to all of the children, with a hearing held and correlating dispositional order filed in October 2009. That CHIPS order set forth several conditions that were required to be met by both B.D.S. and R.D.S. before the children would be returned to them, including psychological evaluations of both parents, proof that they would provide a safe and stable home for the children, cooperating with the children's therapists and demonstrating an understanding of their special needs, and participating in family counseling, anger management, and parenting programs. Additionally, both parents were required to establish and consistently follow a visitation plan with the children.
¶ 6 J.S. was returned to the custody of his parents from February 2011 to January 2014, when he was again removed from the home due to an extreme infestation at the house of roaches, scabies, and bedbugs, and the health concerns relating to J.S. being constantly bitten.[4] J.S. was returned to the home in June 2014, but was removed again in August 2014 because of suspected physical abuse; during an unannounced home visit, J.S. was observed with a mark on his face that resembled the shape of a coat hanger. His parents at first tried to hide the mark, and then refused to explain it; they then fled the house with the children, but later returned and cooperated with authorities.
¶ 7 A petition for the Termination of Parental Rights (TPR) of B.D.S. (as well as R.D.S.) with regard to J.S. was filed in April 2015. In the petition, the State alleged two grounds for termination: (1) continuing need of protection or services, pursuant to WIS. STAT. § 48.415(2) ; and (2) failure to assume parental responsibility, pursuant to § 48.415(6).
¶ 8 B.D.S. was provided with both an attorney and a guardian ad litem for the TPR proceedings.[5] He entered a no contest plea with respect to the grounds of continuing need for protection in April 2016.[6] A dispositional hearing was then held in July 2016, and the trial court found it to be in the best interests of J.S. that the parental rights of both B.D.S. and R.D.S. be terminated.
¶ 9 B.D.S. filed a motion to remand the matter for an evidentiary hearing regarding his competency. He also argued that he should be allowed to withdraw his plea because it was not knowingly, intelligently, or voluntarily made. The remand court[7] denied B.D.S.'s motion without a hearing. The court noted that the appointment of a guardian ad litem to assist B.D.S. did not require a finding of lack of competency, and further, that a psychological evaluation of B.D.S. did not indicate an inability to understand the proceedings at the time he entered his plea. The remand court also reviewed the plea colloquy performed by the trial court and found it to be sufficient.
¶ 10 However, R.D.S. had also filed a remand motion requesting that her plea be withdrawn, and the remand court had granted an evidentiary hearing for her motion. Therefore, the remand court agreed to hold open the possibility of vacating B.D.S.'s plea until R.D.S.'s hearing, when it could be ascertained whether there was a reason to vacate R.D.S.'s plea. Upon conclusion of R.D.S.'s hearing, the remand court denied her motion, and thus B.D.S.'s motion also remained denied. This appeal follows.
DISCUSSION
¶ 11 On appeal, B.D.S. argues that the trial court erred in denying his postdispositional motion without an evidentiary hearing. He further contends that his plea should be allowed to be withdrawn because it was not knowingly, intelligently, and voluntarily made.
¶ 12 In criminal cases, before accepting a plea the trial court is required to conduct a colloquy with the defendant to ascertain that the defendant understands the elements of the crime to which he or she is pleading guilty, the constitutional rights he is waiving by entering his plea, and the maximum potential penalty that can be imposed. See WIS. STAT. § 971.08 ; State v. Bangert , 131 Wis. 2d 246, 260, 389 N.W.2d 12 (1986). This colloquy with the defendant helps to ensure that the defendant is knowingly, intelligently, and voluntarily waiving the rights being given up by entering a plea. See State v. Brown , 2006 WI 100, ¶ 23, 293 Wis. 2d 594, 716 N.W.2d 906. This same analysis is used to evaluate pleas entered in TPR cases. See Waukesha Cty. v. Steven H. , 2000 WI 28, ¶ 42, 233 Wis. 2d 344, 607 N.W.2d 607.
¶ 13 Under the Bangert analysis, the parent seeking plea withdrawal "must make a prima facie showing that the [trial] court violated its mandatory duties and [the parent] must allege that in fact he [or she] did not know or understand the information that should have been provided at the [TPR petition] hearing." Steven H. , 233 Wis. 2d 344, ¶ 42. "If [the parent] makes this prima facie showing, the burden shifts to the [State] to demonstrate by clear and convincing evidence that [the parent] knowingly, voluntarily and intelligently waived the right to contest the allegations in the petition." Id. If the parent fails to make a prima facie showing, the trial court may deny the motion without an evidentiary hearing. See id. , ¶ 43.
¶ 14 Whether a parent has made this prima facie showing is a question of law that we review de novo . See Oneida Cty. DSS v. Therese S. , 2008 WI App 159, ¶ 7, 314 Wis. 2d 493, 762 N.W.2d 122. In our review, we look to the totality of the circumstances and the entire record to determine the sufficiency of the trial court's colloquy. See Steven H. , 233 Wis. 2d 344, ¶ 42.
¶ 15 B.D.S. suggests that this standard should not apply in cases where this court has remanded the matter to the trial court for fact-finding; he instead asserts that there is a statutory requirement that an evidentiary hearing be held in every case that is remanded. Specifically, he cites the language of WIS. STAT. RULE 809.107(6)(am), which states that "[i]f the court of appeals grants the motion for remand, it shall set time limits for the [remand] court to hear and decide the issue [.]" Id. (emphasis added). The rule was modified to include this language in 2001 for the purpose of "provid[ing] a procedure for ... claims that require fact-finding after the final judgment or order has been entered." Judicial Council Note, 2001, WIS. STAT. RULE 809.107.
¶ 16 B.D.S. asserts that this modified language in the rule mandates that the trial court to hold an evidentiary hearing in every remanded case. However, B.D.S. provides no legal support demonstrating that the rule has been interpreted in the manner he suggests since that language was implemented seventeen years ago. In fact, case law indicates otherwise, as the Bangert standard is used regularly in our review of TPR cases where the plea is being challenged.[8] See Therese S. , 314 Wis. 2d 493, ¶ 6. Moreover, we disagree with B.D.S.'s interpretation of the rule.
¶ 17 "Statutory interpretation presents a question of law that we review independently[.]" Roberts v. T.H.E. Ins. Co. , 2016 WI 20, ¶ 19, 367 Wis. 2d 386, 879 N.W.2d 492. Our analysis "begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry." State ex rel. Kalal v. Circuit Court for Dane Cty. , 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted).
¶ 18 Statutory language is to be interpreted "reasonably, to avoid absurd or unreasonable results." Id. , ¶ 46. Furthermore, "[c]ontext is important to meaning." Id. "Therefore, statutory language is interpreted in the context in which it is used" and "not in isolation but as part of a whole[.]" Id.
¶ 19 The first line of the statutory subsection at issue explains that a motion for remand can be filed in a TPR proceedings if the appeal is based on "any ground that may require postjudgment fact-finding[.]" WIS. STAT. RULE 809.107(6)(am) (emphasis added). It does not mandate that a hearing be held. Rather, it requires that the remand court "hear" the motion-that is, review and consider the motion-and then determine whether a fact-finding hearing is necessary. See, e.g. , Therese S. , 314 Wis. 2d 493, ¶ 6 ; see also Dane Cty. DHS v. S.J. , Nos. 2017AP1578, 2017AP1579, and 2017AP1580, unpublished slip op. (WI App Oct. 19, 2017). And, as the relevant case law indicates, the proper vehicle by which the remand court is to determine whether an evidentiary hearing is required on a postdispositional issue in a TPR case is the Bangert analysis. See Therese S. , 314 Wis. 2d 493, ¶ 6.
¶ 20 In this case, the remand court did just that. The record indicates that in its consideration of the remand motion, the remand court stated that no challenge had been made as to B.D.S.'s competence, and that the psychological evaluations that were done on B.D.S. did not indicate a competency issue; in fact, one of the evaluations indicated that B.D.S. had average cognitive abilities. Indeed, the remand court noted that the trial court had established that B.D.S. had received a general equivalency diploma (GED), and that he was capable of understanding what was occurring in the proceedings. Moreover, the trial court had confirmed that the guardian ad litem for B.D.S. had gone over the plea procedure and consequences with B.D.S. and was confident that he understood. The remand court further concluded that the trial court had reviewed the procedure and the ramifications of entering a plea sufficiently during its plea colloquy.
¶ 21 In sum, the remand court performed a thorough Bangert analysis and found that the trial court had established that B.D.S.'s plea was knowingly, intelligently, and voluntarily made. See Steven H. , 233 Wis. 2d 344, ¶ 42. As a result, the remand court concluded that B.D.S. had not established a prima facie case that an evidentiary hearing was necessary, and denied his motion. See id. , ¶ 43. In our review of the record, we come to the same conclusion.
¶ 22 As an alternative argument of sorts, B.D.S. requests that in the event this court grants relief to R.D.S. in her appeal, we also grant B.D.S. a new trial in the interests of justice because "[t]he mother and father's lives and cases are intertwined[.]" As a result, B.D.S. argues that if those circumstances come to fruition, "the full controversy will not have been fully and fairly tried" and, as such, our discretionary reversal power under WIS. STAT. § 752.35 should be applied.
¶ 23 "We exercise this power 'only in exceptional cases.' " State v. Sugden , 2010 WI App 166, ¶ 37, 330 Wis. 2d 628, 795 N.W.2d 456 (citation omitted). Moreover, B.D.S. does not discuss the elements involved in exercising that authority, develop his argument, or provide legal authority for the same; we thus decline to consider this argument. See State v. Pettit , 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).
¶ 24 Accordingly, we affirm the order of the trial court terminating B.D.S.'s parental rights of J.S., and the order of the remand court denying his postdispositional motion.
By the Court. -Orders affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(e) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

The parental rights of R.D.S. were also terminated in these proceedings. An appeal of that termination is pending as case number 2017AP1771.

The Bureau of Milwaukee Child Welfare (BMCW) has since been renamed The Division of Milwaukee Child Protective Services. Since the agency was still the BMCW at the time these proceedings began, all references will be to the BMCW.

The infestation was so severe that social service providers had stopped working with the family-both at their home and at agency locations-due to the spread of bugs to the providers themselves.

Early on in the TPR proceedings, counsel for B.D.S. requested that a guardian ad litem be appointed for B.D.S. because of his cognitive delays.

There were several procedural delays in these proceedings after the State filed a petition to terminate the parental rights of B.D.S. and R.D.S. with regard to one of J.S.'s siblings, E.S., and then moved the court to join the cases. The State ultimately dismissed the petition regarding E.S. due to his age-he was over seventeen years old at the time.

The remand motion was heard by the Honorable Laura Gramling Perez, which we refer to as the "remand court"; the TPR proceedings were before the Honorable David C. Swanson, referred to as the "trial court."

Furthermore, our supreme court has denied review of TPR cases where this standard was applied, implying tacit approval. See, e.g. , Dane Cty. DHS v. S.J. , Nos. 2017AP1578, 2017AP1579, and 2017AP1580, unpublished slip op. (WI App Oct. 19, 2017) (review denied sub nom. , 2018 WI 14, 379 Wis. 2d 437, 908 N.W.2d 821 ); State v. S.N.N. , Nos. 2016AP2102 and 2016AP2103, unpublished slip op. (WI App Dec. 12, 2017) (review denied sub nom. , 2018 WI 20, 380 Wis. 2d 106, 909 N.W.2d 175 ); State v. M.G. , No. 2016AP1197, unpublished slip op. (WI App July 5, 2017) (review denied sub nom. , 2017 WI 90, 378 Wis. 2d 24, 904 N.W.2d 123 ).