COURT OF APPEALS
DECISION
DATED AND FILED

February 22, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1872**

Cir. Ct. No. **2019CV14**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

LOGAN JON STANWYCK, MADELINE MARY STANWYCK, BY THEIR GUARDIAN AD LITEM, VINCENT R. PETRUCELLI, KIMBERLY A. STANWYCK AND JON J. STANWYCK, SPECIAL ADMINISTRATOR FOR THE ESTATE OF LANCE L. STANWYCK,

   PLAINTIFFS-APPELLANTS,

WEST BEND MUTUAL INSURANCE COMPANY,

   INVOLUNTARY-PLAINTIFF,

   V.

OWNERS INSURANCE COMPANY, STATE AUTO INSURANCE COMPANY OF WISCONSIN, FLORENCE COUNTY BLUE OX TRAIL RIDERS, INC. AND ROBERT W. CALLAWAY,

   DEFENDANTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Florence County: LEON D. STENZ, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Plaintiffs—the children and surviving spouse of Lance L. Stanwyck and the special administrator of his estate—appeal the dismissal of their wrongful death action against Robert Callaway; Florence County Blue Ox Trail Riders (Blue Ox), a nonprofit snowmobile trail maintenance organization (together, Defendants); and Defendants' respective insurers.[1] Plaintiffs alleged that Callaway, a Blue Ox volunteer, killed Stanwyck by negligently operating a snowmobile trail groomer on a trail where Stanwyck was snowmobiling. The circuit court determined that Defendants were recreationally immune under WIS. STAT. § 895.52 (2019-20),[2] and it granted summary judgment in their favor. We agree that Defendants are immune from suit under § 895.52 as statutory "occupants" of recreational land. We therefore affirm.

## BACKGROUND

¶2    The following material facts are undisputed. In February 2017, Stanwyck was snowmobiling on a snowmobile trail in Florence County. Callaway was operating a snowmobile trail grooming machine in that area. Stanwyck was killed when he fell off of his snowmobile and was run over by Callaway while attempting to avoid the oncoming trail groomer that had just crested a hill.

---

[1] For ease of reading, we sometimes use the term "Defendants" even where referring to Defendants and their insurers.

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶3 Plaintiffs brought negligence claims against Defendants. Defendants moved for summary judgment on several grounds, including that they were entitled to recreational immunity as "occupants" of the land where the accident occurred (hereinafter, the accident location). *See* WIS. STAT. § 895.52(1)(d)1., (f), (g), (2)(b) (stating, as pertinent here, that a person or nonprofit organization that "occupies" real property used for recreational activities is not liable for the death of a person engaging in a recreational activity on that property); *see also **Doane v. Helenville Mut. Ins. Co.***, 216 Wis. 2d 345, 351, 575 N.W.2d 734 (Ct. App. 1998) ("An occupant is one who has actual possession of the property, but is more transient than either a lessee or an owner with legal title.").

¶4 The following facts are relevant to the issue of whether Defendants are entitled to recreational immunity as occupants. The State of Wisconsin owns the land where the accident occurred, which is part of a county-wide network of recreational trails. At the time of the accident, a land-use agreement between the Wisconsin Department of Natural Resources and Florence County authorized the county's use of state land, including this location, for public snowmobiling and ATV driving.

¶5 Blue Ox is a non-profit organization whose sole purpose, carried out through an agreement with Florence County, is to maintain snowmobile and ATV trails in the county, including at the accident location. Blue Ox's members, including Callaway, are unpaid volunteers. Blue Ox's current name was applied to the club in 2010; since that time, at the latest, a trail grooming and maintenance agreement has existed between the Florence County Forestry and Parks Department (the Forestry Department) and Blue Ox. Blue Ox (or the entity as it existed under its former name) has provided snowmobile grooming on the county's trails since 1975; has groomed and maintained all snowmobile trails

since at least 2001; and has been the sole provider of snowmobile trail grooming in Florence County since at least 2001.

¶6      Patrick Smith, the Forestry Department Administrator, attested that since at least 2001, "Blue Ox has had a steady presence on the Florence County trails on … basically a monthly basis throughout the four seasons, whether it be for grooming, brush removal, clearing fallen trees, placing signs or other necessary trail maintenance work."  Blue Ox's president similarly attested that "Blue Ox, through its volunteers, maintains a continuous presence on at least a monthly basis throughout the Florence County Trail System, including the trail where the" accident occurred.  Smith further attested that the county requires Blue Ox to groom snowmobile trails "at least once a week and when conditions require." Time sheets documenting the work of Blue Ox volunteers from December 2016 through March 2017 reflect that volunteers worked on Florence County trails at least once per week.

¶7      The county receives state grants for the maintenance and operation of snowmobile and ATV trails, including a July 2016 grant of $37,800 for 2016-17 snowmobile trail maintenance.  To the extent that county funds are available, Blue Ox is reimbursed for its services.  The record reflects that Blue Ox was reimbursed at least $35,444.50 during the winter of 2016-17.

¶8      Blue Ox owns the equipment that it uses to groom and maintain the trails.  The county has provided several loans to Blue Ox for the purchase of trail equipment.

¶9      The last written trail grooming/maintenance agreement between the Forestry Department and Blue Ox was for the 2012-13 year.  According to Smith, since the expiration of the 2012-13 agreement, there has been "an ongoing, but

unwritten agreement each year between Blue Ox and Florence County," with the parties "continu[ing] to abide by the terms of the 2012-2013 agreement, with verbal modifications as necessary."

¶10    Smith attested that trails must be safe in order to remain open to the public.  Thus, he attested,

> Without the grooming and maintenance work of Blue Ox on the Florence County snowmobile trails since [2001] to the present day, [the Forestry] [D]epartment would not be able to fulfill its mandate to operate and maintain the snowmobile trails in the County and the trails could not open to the public.

¶11    The circuit court granted summary judgment in favor of Defendants and their insurers and dismissed Plaintiffs' complaint, determining that, on these undisputed facts, Defendants were immune from suit under WIS. STAT. § 895.52 as statutory occupants of recreational land.[3]  Plaintiffs appeal.

## DISCUSSION

### I. Standard of Review and Legal Principles

¶12    WISCONSIN STAT. § 895.52 confers recreational immunity on property owners, reflecting a public policy that owners should be encouraged to

---

[3] The circuit court further determined that Defendants were entitled to recreational immunity as agents of the county.  *See* WIS. STAT. § 895.52(2)(b).  Because the court dismissed the suit on recreational immunity grounds, it did not address Defendants' alternative argument that they were entitled to governmental immunity.  *See* WIS. STAT. § 893.80(4).  Also because the court dismissed the suit, it determined that a separate summary judgment motion on coverage, brought by Callaway's insurer, was moot.  We do not address these additional issues because we conclude that Defendants are entitled to recreational immunity as occupants.  *See **Barrows v. American Fam. Ins. Co.***, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

open their property to the public for recreational activities. ***Westmas v. Creekside Tree Serv., Inc.***, 2018 WI 12, ¶22, 379 Wis. 2d 471, 907 N.W.2d 68. In keeping with this purpose, "the statute is to be liberally construed in favor of property owners to protect them from liability." ***Id.*** (internal quotation marks and citation omitted).

¶13 Subject to exceptions not applicable here, WIS. STAT. § 895.52(2)(b) provides that "no owner … is liable for the death of … a person engaging in recreational activity on the owner's property." The phrase "recreational activity" is defined by statute expressly to include snowmobiling. Sec. 895.52(1)(g). As relevant here, an "owner" includes a "nonprofit organization[] that … occupies" real property. Sec. 895.52(1)(d)1., (f).

¶14 The term "occupant" (i.e., one who "occupies" property under WIS. STAT. § 895.52)

> include[s] persons who, while not owners or tenants, have the actual use of land.... While "occupant" includes [an] owner and lessee, it also means one who has the actual use of property without legal title, dominion or tenancy. In order to give meaning to [occupies], the term should be interpreted to encompass a resident of land who is more transient than either a lessee or an owner.

***Hall v. Turtle Lake Lions Club***, 146 Wis. 2d 486, 491, 431 N.W.2d 696 (Ct. App. 1988) (alterations in original; internal quotation marks and citation source omitted). "[T]he term 'occupy' as it is used in WIS. STAT. § 895.52 requires a degree of permanence, as opposed to the mere use of the property in question." ***Westmas***, 379 Wis. 2d 471, ¶46 (internal quotation marks and citation omitted). Occupation also requires that the party seeking immunity be "responsible for opening up the land to the public" for recreation. ***Roberts v. T.H.E. Ins. Co.***, 2016 WI 20, ¶41, 367 Wis. 2d 386, 879 N.W.2d 492.

¶15     We review a grant of summary judgment de novo, affirming where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2); ***Doane***, 216 Wis. 2d at 349.  Where the material facts are undisputed, we determine de novo whether WIS. STAT. § 895.52 bars a negligence suit.  ***Doane***, 216 Wis. 2d at 349.

## II.  *Application to Plaintiffs' Appeal*

¶16     Plaintiffs' primary argument on appeal is that Blue Ox's agreement with the county for 2016-17 snowmobile trail grooming and maintenance is void because of the county's failure to comply with the public-bidding requirements of WIS. STAT. §§ 59.52(29) and 66.0901.  It follows, Plaintiffs argue, that Defendants cannot claim any "rights" (i.e., recreational immunity) under this "illegal arrangement."  Defendants respond with several persuasive reasons why statutory public-bidding requirements do not apply to the 2016-17 agreement.  We need not address these arguments, however, because, as explained in more detail below, we conclude that the county's compliance with public-bidding requirements is irrelevant to determining Defendants' recreational immunity.[4]

---

[4] Plaintiffs do not raise a separate argument with respect to Callaway's status as occupant.  Thus, Plaintiffs implicitly concede that if Blue Ox is an occupant, its volunteer, Callaway, is also an occupant.  Accordingly, we analyze WIS. STAT. § 895.52 as it applies to Defendants together.

¶17    As stated, since at least 2010, Blue Ox and the county have had an agreement for trail grooming and maintenance.[5]   In some years, this agreement was written; in 2016-17, it was not.   In all years, Blue Ox performed the same services with the same frequency.   It is this ongoing agreement that authorizes Defendants' continued presence on county trails; thus, it is the nature of this agreement that is relevant to analyzing Defendants' status as occupants. Separately, the county was awarded a State grant for 2016-17 snowmobile trail maintenance, and it appears that the county paid the majority of these funds to Blue Ox.   But whether this payment violated public-bidding (or any other) statutes has no bearing on Defendants' "actual use" of county trails.   *See **Hall***, 146 Wis. 2d at 491.   An organization's status as "occupant" does not, in this sense, hinge on the enforceability of its contract with the property owner but on whether the organization, in fact, had actual nontransient use of the property where the recreational activity occurred.   *See **id.***; *see also **Held v. Ackerville Snowmobile Club, Inc.***, 2007 WI App 43, ¶16, 300 Wis. 2d 498, 730 N.W.2d 428 ("It is the relative functions of the organizations and their relation to the collective task of maintaining that [snowmobile trail] system that makes them 'occupiers' under the statute...." (alterations in original; internal quotation marks and citation omitted)); ***WEA Prop. & Cas. Ins. Co. v. Krisik***, 2013 WI App 139, ¶23, 352 Wis. 2d 73, 841 N.W.2d 290 (stating a person may be an "occupant" even where he or she does not have express permission to enter the property).

---

[5] Blue Ox, under a former name, appears to have performed all of the same grooming and maintenance services from 2001, at the latest, through 2010.   Because the total span of the agreement between Blue Ox and the county is not pertinent to our analysis, we treat the agreement as beginning in 2010.

¶18 Plaintiffs further argue that the undisputed facts do not support Defendants' recreational immunity as occupants, in that Defendants' "presence on the property did not exceed 'mere use[,]' nor did it approach 'a degree of permanence.'" *See Westmas*, 379 Wis. 2d 471, ¶46 (occupancy requires a "degree of permanence" (internal quotation marks and citation omitted)). We disagree. The facts of this case are substantially similar to those in *Leu v. Price County Snowmobile Trails Ass'n, Inc.*, 2005 WI App 81, 280 Wis. 2d 765, 695 N.W.2d 889, and *Held*, 300 Wis. 2d 498, in which we determined that snowmobile trail grooming/maintenance organizations enjoyed recreational immunity as occupants. Those cases support according recreational immunity here.

¶19 In *Leu*, a snowmobiler was killed by a falling tree. *Leu*, 280 Wis. 2d 765, ¶2. His surviving spouse sued two nonprofit organizations that together owned trail grooming equipment; controlled when and how trails were groomed; and built, maintained, and groomed snowmobile trails. *Id.*, ¶3. We determined that these functions met the criteria for "actual use" for purposes of occupation and that the organizations were therefore recreationally immune. *Id.*, ¶¶11-15. Likewise, in *Held*, 300 Wis. 2d 498, ¶¶2, 18, we concluded that a snowmobile club was an occupant not liable for injuries snowmobilers sustained when they collided with abandoned grooming equipment. This conclusion followed from the fact that the club "was engaged in ongoing trail maintenance on the property [and] maintained the trail during the snowmobiling season when snowfall levels would allow." *Id.*, ¶18.

¶20 Here, Defendants perform the same general functions, with at least the same frequency, intensity, and "permanence," as the snowmobile organizations in *Leu* and *Held*. Defendants maintain a regular, year-round presence on Florence County trails, and they are responsible for all trail grooming and maintenance

necessary to keep those trails open to the public. Under our precedent, these activities are sufficient to make Defendants "occupants" of the accident location.

¶21 It is notable that, with the exception of arguing that the arrangement between Blue Ox and the county was void, Plaintiffs do not attempt to distinguish *Leu* and *Held*. Instead, they rely on *Westmas* and *Roberts*, two cases in which our supreme court determined that defendants were *not* occupants of recreational land. These cases are distinguishable and do not support Plaintiffs' position.

¶22 In *Roberts*, 367 Wis. 2d 386, ¶¶5-6, 41, the court determined that the defendant—a hot air balloon owner and operator providing balloon rides at a shooting range charity event—was not an occupant. This holding hinged on the fact that other entities (the shooting range owner and the charity event sponsor) were responsible for "opening the land" (i.e., organizing the event and bringing people onto the land). *Id.*, ¶37. Noting that "[n]one of the prior cases interpreting WIS. STAT. § 895.52 has granted immunity to a third party not responsible for opening the land to the public," the court determined that it would be contrary to precedent, and against public policy, to extend immunity to a third party merely operating on the premises. *Id.*, ¶¶33, 37-41.

¶23 Plaintiffs summarily assert that Defendants "did not legally open the property for public recreational use," but this argument appears to rest primarily on the "legality" of Blue Ox's agreement with the county (an argument we have already addressed) and not on Blue Ox's activities on the land itself. In fact, unlike the defendant's role and activities in *Roberts*, here, Defendants *are* responsible for "opening the land" to the public, in that they perform the grooming and maintenance work necessary for the trails to open and remain open. Plaintiffs further argue that Defendants cannot be said to have "opened the land" because

"the State of Wisconsin and Florence County opened the land … long before [Defendants] appeared on the scene." This argument mischaracterizes Defendants' role as "simply grooming" and ignores evidence that county trails could not *stay* open without Defendants' services. We conclude that, under the analysis in **Roberts**, Defendants are properly considered "occupants."

¶24     Plaintiffs further direct us to **Westmas**, 379 Wis. 2d 471, ¶¶1, 5, in which our supreme court determined that Creekside, a tree-trimming business, was not entitled to recreational immunity as an occupant of the youth camp where it was trimming trees. Relevant to that holding was that Creekside's use of the property "did not approach 'a degree of permanence'": Creekside was only on the property for several days, "mov[ing] from temporary location to temporary location for the limited purpose of trimming trees as needed to satisfy its contract." *Id.*, ¶48. Moreover, Creekside's presence did not "have any effect on whether [the] property would be open to the public for recreational purposes." *Id.* In contrast, Defendants' presence on Florence County trails was regular, ongoing, and broad in scope. In addition, Defendants' work was necessary for the property to remain open to the public.

¶25     For these reasons, Defendants are entitled to immunity under WIS. STAT. § 895.52 as statutory occupants of the land where the accident occurred. Accordingly, we affirm the summary judgment order dismissing all claims against Defendants.

        *By the Court.*—Order affirmed.

        This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.